Thank you. John DiStefano for the Plaintiff. The issues in this case are number one, whether the trial court erred by excluding evidence of similar accidents and failed safety tests that showed that the latter was defective and more likely than not to cause Mr. Musial's injury. Two, whether the trial court erred by excluding relevant impeachment evidence, including the other accidents and the safety tests and the arbitration over the super ladder that showed the dishonest testimony of the defendant's lead expert, Mr. Kwan, including his claim that he wasn't aware of two versions of the ladder, even though he had evaluated the differences between them for an arbitration that Riegel lost. And third, whether the trial court erred by excluding evidence of how Riegel passed off the super ladder to defeat Costco's evidence to show that Riegel's misrepresentations were a cause of Mr. Musial's injury. I'll begin with the prior similar incidents. I need to ask you a question about the prior similar incidents because I'm not sure I can tell from the record. I take it you wanted to introduce those incidents through your expert? Yes, Your Honor. In other words, there's no separate offer of proof in this record that I can find that we would like to put in evidence of these for the truth of the matter of them. Rather, you wanted your expert to be able to say he had considered these incidents in arriving at his at his opinion that the ladder was defective, correct? Well, I think the expert was had personal knowledge. No, I'm not. Put aside for a second whether it was error not to let the expert test. I'm just trying to I can't find in this record any attempt by the plaintiff to say here's an offer of proof, Your Honor, without respect to our experts testimony. The offer of proof was through the expert, right? And so the X and the expert can the expert testimony would be as a basis for his opinion, right? The expert would say the reason that I've reached my opinion is I've looked at these things. The expert couldn't testify about the that these how these accidents occurred. He can only testify that he examined the ladders. Somebody else may have told him how the accidents occurred. He wasn't a witness to it. So it seems to me your objection has to be to the exclusion of it from your expert's testimony, not because you were somehow prevented from putting in rebuttal evidence. That's what troubles me. So tell me, tell me where I can find an offer of proof of rebuttal evidence that you would put it. Well, it would have been as support for the expert testimony. But the basis of the court's ruling wasn't, you know, what the the substance of the nature of the proof as much as the how would the experts testimony have changed or been more incident, the Simon incident allowed in, but not the others in multiple ways. Because first of all, the frequency or the additional incidents would show the jury that the Simon instance was not an isolated case that this happened more than once. In addition, it would it would bring home the fact of notice the defendant. Two of these incidents occurred before Mr. Musial's accident. And third, the the video evidence on the security video for Mr. Aghiani's incident was extremely powerful, extremely powerful evidence. And of course, this is not only relevant to a substantive evidence of the defect, but also relevant to impeachment of Mr. Kwan, who maintained throughout the trial that this binding and or reflect the defect. Your expert was allowed to testify about one previous incident, correct? Correct. That occurred roughly the same way before this incident occurred. Correct. So that he would. I don't think there was any doubt in this record that the defendants had noticed that these kinds of incidents had occurred on this ladder. Would it make any difference if they knew that they had three times the notice that they had? I think so. Yes, because the you know, just as a matter of of risk management, a company that's on notice of repeated accidents as opposed to just one, you know, exceptional case would have a different level of responsibility and need to pay a different level of scrutiny to the design of the ladder and whether or not it should continue to be marketed and designed the way that it is. When I read the ruling on the motions in limine, Judge Tucci seems to be saying these ladders involving the two other accidents, because it's just these two that you're talking about now, were manufactured at different plants than the one your client's ladder was manufactured at and they were different models. Well, even though your expert would have said the models are essentially similar. I guess we review his rulings for abuse of discretion. I read into that his concern that we'll get into a separate trial about how the thing changed and who did what, when, and I'm going to let you get one in but not three. Why is that an abuse of discretion? It was in the first place because there was evidence that the design of the ladder had not changed since Regal acquired Dial and the intellectual property. That's at ER 655 and 660 to 669. But in addition, I mean, in addition to the fact that Mr. Morse was the expert who was personally involved with those two cases, you have to pay attention to the fact that these accidents are similar in all the material respects. You have the design of the ladder, the warnings, the lack of visible locking indicators, and this flexion binding release behavior that makes up the scope of the risk. And so Judge Tucci, I mean, he was especially focused on the fact that he couldn't determine the exact mechanism of the way the lock lever released in each case, essentially requiring a level of identical circumstances. And it's, I mean, that's a legal error that's at least an abuse of discretion. Were the circumstances of the Simon incident the same as the circumstances of the other two whose names I forget at the moment? In other words, was the basis on which the district court ruled that two of these should not be admitted also true of the one that was admitted, which would make it seem quite arbitrary? That's why I'm asking the question. Well, the, we're actually We're all three alike, basically, Simon and the other two. I have a similar concern. Isn't the test substantially similar? And there was a lack of evidence offered to show that they were, the other two were substantially similar? That's actually not my question, but I mean, it's the same, well I'm trying to determine what, the district court criticized two of the incidents and said I'm not letting them in because of these factors, but he let in Simon. And so what I'm trying to figure out is whether Simon is the same as the two that were excluded, meaning that there were three things alike the judge excluded two and allowed one. That's what I'm trying to, is that what happened? That's what I'm trying to figure out. Well, I think they were, they were the same in the material respects of a, a single rung collapse. And, but I think that, you know, the facts of each case, you know, vary in the particulars. And in addition, the Aghiani incident was a third case that was excluded, which we also contend was substantially similar. Probably the most powerful proof because it was standing on a, one of the higher rungs of the ladder, trimming his palm trees in the same way as Mr. Musial, when the ladder suddenly gave out beneath him, which again, you know, provided proof positive of the binding effect and the idea that the ladder can support a, the weight of a user above an unlocked rung. But part of, and I want to go back to Judge O'Scanlan's question. Part of what I think Judge Tucci was saying, he may have been wrong, but I want to, that's why I want to explore it with you, is that I don't know that these other ones were one rung collapses. I don't want to try that issue in this case. I just, and so your expert says they're one rung collapses, but I assume the defendant would then be able to introduce evidence that those other ones weren't. And I think his concern, as I read it into record, was I only want to try one case here. So I'll let you get an evidence that this happened before, so you can show that they knew about it and that had time to change it, but I'm not going to retry each of these other cases here. Assuming that was his thought pattern, he didn't say it that way, but I read that into the record. What's wrong with that? Well, I think the swiftest answer is the lack, is the fact of notice to the defendant, that you have this recurring pattern again and again of a telescoping ladder that gives out under its users. Mr. Corbin climbed the ladder twice, and then it gave out. And then you back up to the issue of the visible locking indicators, the lack of locking indicators by which a user could be certain that each rung was locked, because, you know, if a user sees visibly that a lock is not functioning or has been released in a … But you were able, that's evidence you were able to put before the jury. You were able to tell the jury there weren't, there weren't indicators, but etc. You just weren't able to tell the jury that there were two or three other accidents in which somebody had an accident apparently because, although nobody had ever tried it, that this was, this hadn't locked. But there wasn't a jury verdict in those cases or an admission. So, if I'm the judge, I worry now, if I let you put this in, does the other side get to put in evidence about those other cases and the circumstances of them? And so, I get back to Judge O'Scanlan's question. How can the judge be reasonably sure these are substantially similar accidents? We know some, if there are one person falling off the ladder accident, but how can he be, how does he get assurance they're substantially similar? Because I think the fact that there's liability for a failure to give, for failure to warn, which includes the visible locking indicator, shows that the scope of the risk is broader than the particulars of these accidents if they all fall within the scope of that failure to warn. And here, you know, the substantial similarity of the accidents runs through the support, the weight of a user above an unlocked rung, and then the accidents wouldn't have occurred. So... Counsel, I have one more question that I know you're running down your time, but I understood the jury's verdict to find that there wasn't a one rung collapse that caused the injury. Am I reading that first answer incorrectly? Because if the jury found that this wasn't the cause of his injuries, then how does any of the rest of this matter? The verdict form was not specific to one rung collapse. The verdict form was about whether the defect caused the injury. Well, it's... Such that it underwent a one rung collapse. Right. The jury said no to the question whether the latter was unreasonably dangerous as outlined in jury instruction 17 to 20, such that it underwent a one rung collapse that approximately caused his injury. So I read that. I mean, it's a complex sentence, but I read it to be a finding that there wasn't a one rung collapse. Two points with that, Your Honor. First, whether the jury found the latter was defective or not also bears directly on causation, because if they don't believe that a defect exists, then they could find that the accident was less likely to occur that way. So the evidence of the defect runs through. And so here is, in particular, the lack of a visible locking indicator. If they, you know, believe that that and the excessive flexion in the latter, if they had believed that those would have made a difference in the behavior of the latter, then that would ultimately impact their finding on the likelihood that the accident occurred the way we said. It's difficult for me to read this and know what the jury found, because the defense argument was in part, there wasn't a one rung collapse at all. Your guy was trimming a palm tree and fell off the ladder. And if the jury believed that, then it might have found that even if the latter was unreasonably dangerous, that's not what approximately caused the injury to your client. So how do we read this verdict? The question of whether they believed a rung rung collapse occurred is inextricably intertwined with the question of whether the product was defective and likely to cause a one rung collapse. And so the two cannot be separated. The question I think that Herbert is asking is causation. What is, what's the showing that whatever happened with the one rung, that that was the cause of his falling off the ladder? Isn't that, isn't that the problem? Yes, but I think, I think there, there, there's no way to distinguish between the two. There's no way for us to read this and figure out what they found. Evidence of the defect is evidence of causation. And so, you know, the problems with the proof on the defect, including the ANSI testing, et cetera, also taint the verdict on causation. And if you don't mind, I'll reserve what time I have. Yeah, we don't have much time. We asked a lot of questions, so you may have a minute added for rebuttal time, so. Thank you. Good morning. It's an honor to be here, and may it please the court. My name is Rena Rye, and I represent Telesteps, Inc., Dial Industrial Sales, Inc., and Regal Aluminum Products, Inc. I will refer to them as Appellees or Regal, cumulatively today. Picking up on what Your Honor's questions were, I did want to start today with refreshing or summarizing some of the evidence that the jury heard in this case. As mentioned by counsel in their briefs, cases involving products liability, in cases involving product liability, expert testimony is central to a product claim under Arizona law. That is Anderson v. Nassi. Well, counsel, let me focus you on the thing that concerns me, which is related to that. Expert testimony is everything in these cases, and what's troubling to me is that there is not what the jury heard, but what the jury didn't hear. It seems to me that if I understood the pitch that your clients were making to be, this didn't even happen the way he's claiming. There wasn't a collapse. He just fell off the ladder, and of course people do just fall off ladders sometimes, unfortunately. And so the jury, if they knew that a number of people had had one-rung collapses causing accidents and severe injuries, wouldn't that bolster considerably the strength of the expert's assertions and the believability of the plaintiff's description of the accident? Yes, Your Honor. To address that, really we're talking about the three other incidents, would be Johnson and Corbin and Aguiliani. And relative to the Johnson and Corbin cases, which were the two cases that were first, the appellants were seeking to admit for its substantial similarity. The problem with those two cases is that neither the Johnson or Corbin expert That's not why the judge excluded the evidence. He didn't say, I'm excluding it under Rule 16. Correct, Your Honor. He said, I'm excluding it because I don't find it substantially similar. He actually said he excluded it because there was not enough or sufficient evidence provided from which he could conclude that the incidents were substantially similar. How were those reports different than Simon? That's what I'm trying to figure out. We never received those reports. That's not my question. Okay. In focusing on substantial similarity, which is what the district court was focused on, how were those incidents different than the Simon incident on the merits, not on notice or no notice? Right. So the way that the information on Simon and Corbin was provided, and the only way it was provided, was through their expert, Dr. Morse, who said, Johnson, 1999, one-run collapse. Corbin, 2000, one-run collapse. And Simon? What was said about Simon? Well, the Simon case, the expert report was provided. So there was substantially more... But it provided the basis and more facts related to how the accident happened. So we had in that information. We didn't have information on how the incident was alleged to have occurred. I'm not worried about you. I'm worried about the judge. Yes. You won. You can't complain about unfairness. Yes. And I want to follow up with Judge Graber's asking about, so did the judge say something like, I couldn't find it in your record? Look, as to this one, since I've got complete information or a report about how it occurred, I'm going to let it in. As to the other two, I don't have complete information about how they occurred, so I'm not going to let it in. That might be a rational reason. Did the judge say that? Yes. So in the Dalbert, during the Dalbert process, the judge held that the expert was qualified to test about other incidents so long as those other incidents were otherwise admissible. Because there was information about the Simon case and the defense had the ability to cross-examine the expert relative to similarities in that regard, the Simon incident was allowed in. Is that what the judge said, or is that your understanding? Yes, Your Honor. Give me a page sign. Yes, I will. Well, it's hard to find. You can supply it later. You can supply it later. I will supply it later. Sorry, Your Honors. But I would submit to you what the court said was that the information that was being sought to be introduced was not addressable by cross-examination and, therefore, crossed the line and was not admissible. In other words, to allow the expert to testify about the Corbin case and the Johnson case, in the court's view, would disarm the defense because we had no benefit of information upon which to challenge the expert's, Dr. Morris's, opinions that the one-run collapse even occurred in those cases. So in that case, what the court really held was the evidence was very scant with respect to those cases, and what the district court did additionally was he performed a voir dire of the expert at trial, and he asked the expert specifically if he could provide additional information about the causation related to those two cases, and the expert could not provide additional information, and, therefore, the court, on voir dire, continued with its original ruling that those matters should not be presented to the jury. And can you discuss the additional third excluded item, which is the video? And Aghiani. Yes. Yeah. I would love to. There are a couple of bases why all of these cases should have been precluded as well. One is the disclosure issue that we believe was in the court's mind. What did the court rule with respect to that? With respect to Aghiani, at first, the court ruled that it wasn't substantially similar because according to Dr. Morris, there was a substantial distinction between a collapse involving a one-run and a collapse that was called a sequential collapse. The expert in the pretrial discovery process and the court cited to that indicated those are two different mechanisms of failure. They involve different setup and uses of the ladder. One wasn't fully extended. Is that what you're saying? That's correct. And the evidence in this case was that Mr. Musial successfully fully extended his ladder. That was his testimony, and that was Dr. Morris's testimony or a foundation for his opinions in the case. In the Aghiani matter, the ladder was not fully extended, and if a user uses the instructions to fully extend but doesn't fully extend the ladder, it creates that danger where the rungs can collapse by operation of how the ladder works. In that case, it was concluded by the experts that it was a sequential collapse, meaning it was never fully extended in the first instance. So the court held, the district court held, that he did not find that those incidences according to plaintiff's own experts' framing of the issues and framing of whether those were different accidents and precluded Aghiani. And to the extent that any of those were precluded at trial and constitute error, which in our view the court was within its wide discretion to preclude evidence of these cases, but to the extent it could ever be viewed as error, I believe that this court should view it as invited error because the framing of this case was all dependent, as Judge Graber, you mentioned, upon the expert's testimony. And the expert testimony that was provided to the district court judge was that the cause of this accident was a one-rung collapse. A one-rung collapse was separate and distinct from a sequential collapse. The ANSI testing standards do not relate to a one-rung collapse. I think the expert says ANSI completely blows it off. And therefore, the court, in its rulings, held that anything related to testing doesn't answer the call of the question for the jury, which is whether there was a one-rung collapse, by virtue of the expert's framing of the testimony. So Judge Tucci carefully analyzed the case and limited the testimony based upon what the plaintiffs chose to put in front of the court as being the sum total of the expert's opinions in the case. So I'm looking at the transcript of the motion in limine hearing, which is in your excerpts of record. It begins on page 213. And Judge Tucci talks a little bit in there about some evidence that the locking mechanism had changed over time. How does that pertain to these excluded incidents? Yes, thanks. That's another important distinction. The appellants in their moving papers claim that there was testimony that the locking mechanisms never changed. And therefore, regardless of where they were manufactured or when they were manufactured, the design defect in this case, meaning the locking levers, were the same. And so that afforded credence to their claim that they were substantially similar. But that was predicated on a citation, ER 612 to 617, that really is a misrepresentation of what the trial testimony was. Tell me what evidence there was that the mechanisms had changed. Well, there was an admission by their own expert, Dr. Morse, at ER 789, that there were changes in design of the Teleseps 1205 ladder throughout the years. There was testimony from the regal representatives that they could only state that the locking mechanisms remained the same from 2004 to 2007. The Aguillani ladder was manufactured in 2000, and we know the Corbin and Johnson accidents occurred in 1999 and 2000. So what the court ---- And when was the ladder that Mr. Musial was using manufactured? In 2007. So there was evidence on the record that from 2004 to 2007, there were no modifications made to the design of the ladder, including the locking mechanism, but there was no evidence that as of 1999 or 2000, when these other incidents occurred, that the locking mechanism was substantially similar to the one at issue in this case. Was there evidence that it was dissimilar? There was evidence that it had changed. Well, there was evidence that the design of the ladder had changed. Was there any specific evidence that the design of the locking mechanism had changed? There was some evidence that there were modifications made to the locking levers throughout the course, and there were some locking levers and modifications actually showed to the jury. So I believe that the court was well within its discretion. But, again, by the time we are here on appeal, the appellants are urging that horizontal bend, test, and deflection somehow has a causal connection to the one-run collapse, that the lack of locking indicators is the cause of a one-run collapse. And to the extent that they do that now, I think there's a change in position. They also are changing position from what their expert said pre-trial to there is a distinction between a one-run collapse and a sequential collapse to now suggesting that a one-run collapse and sequential collapse are substantially similar for purposes of bringing in other cases, including Aghiani. And can you help me with the record? I read the motion in limited hearing, but the judge doesn't seem to rule at that hearing. Does he rule later in a written ruling, or does he rule later in an oral ruling? He says, okay, now I've heard what I need to hear. Everybody needs to get reports to me. I know what my homework is. Where does the eventual ruling come from? In the motions in limine? I'm sorry. Yeah. Yes, he does eventually have a ruling on the motions in limine, and I know at least ---- It's a written ruling, is it not? Yes. Yes, it is. Okay. He doesn't rule at that hearing. He later follows it up with a written ruling. Correct. Yes. And so, Your Honors, I think that really because of this change in position, I think that this Court cannot overrule Judge Tucci's rulings because any error, if there is any ---- Well, we can. You're arguing we shouldn't. You shouldn't. Because any error is error that they invited because of the change in positions that they urge now in the appellate briefing that was substantially different from what their expert was urging at the time of trial. So that really goes to that issue. I also wanted to address an issue relative to whether or not the testing data and or the expert opinions related to other incidents would come in under some sort of impeachment theory. And I wanted to address that. The appellants urged that there was an opening of the door to bring in these additional similar and dissimilar incidents as well as the testing data based on cross-examination or direct examination of Dr. Kwan, Riegel's expert. And in doing so, they sort of take a ransom note approach to cutting and pasting what the expert's testimony was to get to a statement that it was generally safe, opening the door to this other information and evidence. But we would urge the Court to go back to the ER and review the record because it is clear that the expert was hired specifically to analyze the subject ladder. That's contained in the expert's affidavit submitted by Dr. Kwan, ER 551. Thank you, Counsel. You have exceeded your allotted time. Oh, I'm sorry, Your Honor. Thank you. Thank you. You have a minute for rebuttal, Mr. Stefan. Thank you. Just a few quick points of clarification. All sequential collapses involve a one-rung collapse. Not all one-rung collapses are a sequential collapse. The difference only lies in which rung initiates the collapse. And if it's several rungs below the user, there's a chain reaction up the ladder. But the binding effect is still demonstrated in the Aghiani video because the ladder apparently was or became unlocked before he climbed it. He was standing up there for a while, and then it collapsed. The Simon instance also involved someone who climbed the ladder twice before it fell, emphasizing that binding effect, which I think was even stronger proof than the Simon instance because in the Simon instance, the person never reached the roof. These are people working with their ladders, which later collapse. I'm still having trouble with the record here, so I need you to help me with it. When the judge issues his written ruling on the motions in limine, he says, look, I'm not going to let anything in other than one-rung collapses. You've addressed that. But one-run collapses for present purposes, evidence pertained to other one-run collapses or otherwise meeting the requirements for admissibility, will be substantially similar for purposes of Rule 401 and 402 and will be properly before the jury. And so, therefore, the motion in limine is denied. You must then later conclude that there wasn't sufficient evidence to show admissibility with respect to two of these one-run collapses. Where does he do that? He did it during trial. I'm sorry. When you attempt to offer them, he says, I don't find there's sufficient evidence of admissibility as to two of these, but I find sufficient evidence of admissibility as to the third? Correct. He reversed his previous ruling. Right. He doesn't fund the bench at the time that you proffered the evidence? Yes, actually. Can you give us a communication? It was ER 250 and ER 142 to 144. Yeah, 250 is the ruling. There's 250. I got you. It would be helpful, actually, because opposing counsel also is going to be sending us some ER references on this topic. So if each of you would just send us a ‑‑ it's probably not a 28J letter, but just send us something. A letter to the clerk that says here are the appropriate pages of the record. Certainly. And let me tell you, I know what he says at page 250. But what he says at page 250 is I'm going to let in one wrong collapses to the extent that they meet the ‑‑ So we're looking for the reasons given subsequently. And your time has expired as well. Understood. Thank you. Thank you, counsel. The case just argued is submitted, and as you can tell, it's a challenging case, and we appreciate both counsel's helpful arguments.
judges: O'scannlain, Graber, Hurwitz